UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALLIANCE DEVELOPMENT, INC., § <br> And JAMES E. GALLOWAY, § <br> § <br> Plaintiffs, § <br> § <br> VS. § <br> § <br> ST. PAUL MERCURY INSURANCE § <br> COMPANY, et al., § <br> § <br> Defendants. § | Civ. No. 4:11-CV-03234 |

## MEMORANDUM AND ORDER

Before the Court is Plaintiffs' Motion for Remand ("Plaintiffs' Motion") (Doc. No. 10). After considering the Motion, all responses and replies thereto, and the applicable law, the Court concludes that Plaintiffs' Motion must be **DENIED**.

### I. BACKGROUND

Alliance Development, Inc. ("ADI") and James E. Galloway ("Galloway") (collectively, "Plaintiffs") brought this lawsuit in state court against St. Paul Mercury Insurance Company ("Mercury"), St. Paul Fire and Marine Insurance Company ("Marine"), and James E. Hamel ("Hamel") (collectively, "Defendants"), seeking declaratory judgment and damages for libel. (Doc. No. 1-3, First Am'd Pet. ¶¶ 1-17.) Plaintiffs are residents of Harris County, Texas. (*Id.* ¶ 2.) Mercury is a foreign insurance company and Marine is a foreign corporation; both are licensed to do business in the State of Texas. (*Id.* ¶¶ 5-6.) Hamel is a resident of Dallas County, Texas. (*Id.* ¶ 7.) Defendants removed on the grounds that Hamel had been fraudulently joined and, thus,

1

there was complete diversity. (Doc. No. 1, Defendants' Notice of Removal ¶ 12.) Plaintiffs now seek to remand the lawsuit.

According to Plaintiffs, they executed an indemnity agreement ("the Indemnity Agreement") in favor of Mercury in order to facilitate Mercury's issuance of performance and payment bonds for the benefit of Alliance Construction, Inc. ("ACI"). (First Am'd Pet. ¶ 8.) Plaintiffs state that the indemnity agreement outlined that, under certain circumstances, the indemnitors might provide collateral to Mercury to secure payment to Mercury of any losses it might have on bonds issued with ACI as principal. (*Id.*) It was allegedly agreed in the Indemnity Agreement that, as a condition precedent to Mercury's right to request Plaintiffs to provide collateral, a loss reserve for a claim on a bond issued for ACI's payment or performance obligations would be established. (*Id.*)

In early 2008, Plaintiffs explain, Mercury informed Plaintiffs that it might be called upon to honor a bond issued on behalf of ACI with respect to a project in Harris County, Texas for which Stewart Builders, Inc. claimed to be an unpaid subcontractor of ACI ("Stewart Claim"). (*Id.* ¶ 9.) Mercury had apparently issued a payment bond for the project at ACI's request. (*Id.*) In demanding collateral, Mercury fraudulently claimed that it had established a loss reserve for the Stewart Claim in the amount of approximately $591,000. (*Id.*) However, Plaintiffs explain, they believed the request for collateral was premature and refused to post it. Plaintiffs argue that Hamel, Mercury's lawyer, fraudulently filed a Uniform Commercial Code financing statement ("UCC-1"). (*Id.* ¶ 10.) The UCC-1 lists Marine as the secured party, even though Plaintiffs had never been an indemnitor of Marine, been indebted to Marine, executed any document reflecting they were a debtor of Marine, or ever had a security agreement with Marine. (*Id.*)

2

According to Plaintiffs, they did not discover the fraudulent UCC-1 filing until the fall of 2010, when ADI was attempting to close a real estate transaction. (*Id.* ¶ 11.) Although ADI successfully closed its transaction, Galloway, in contrast, had his loan applications rejected due to the existence of the UCC-1. (*Id.*) Plaintiffs now seek, under Texas' Uniform Declaratory Judgments Act, a declaration that the UCC-1 is void, illegal, and of no legal force and effect. (*Id.* ¶ 14.) In addition, Plaintiffs insist that the UCC-1 "constitutes an ongoing libel of the credit of ADI and Galloway" and thus seek damages. (*Id.* ¶ 17.)

Plaintiffs now seek to remand this action, insisting that Hamel was not fraudulently joined. They explain that they have a claim against Hamel because he filed the UCC-1 on behalf of an entirely separate entity than Mercury—Fire & Marine. (Mot. Remand 4.) Plaintiffs insist: "There was no litigation, threatened litigation or even a dispute between Plaintiffs and Fire & Marine. Neither of the Plaintiffs had ever executed any document reflecting they were a debtor of Fire & Marine or ever had a security agreement with Fire & Marine." (*Id.*) Therefore, Plaintiffs aver, Hamel is not protected by any litigation privilege that might preclude a lawsuit against him. (*Id.*) Defendants respond that Marine is included as one of the sureties in the Indemnity Agreement. (Doc. No. 13, Resp. to Mot. Remand ¶ 6.) Therefore, Defendants insist, Hamel is protected by the litigation privilege. (*Id.* ¶ 16-17.) As Plaintiffs cannot recover against Hamel, Defendants contend, this case should not be remanded.

## II. LEGAL STANDARD

The removal statute, 28 U.S.C. § 1441(a), provides:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

Federal courts have original jurisdiction over any civil action "where the matter in controversy exceeds ... $75,000 ... and is between citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). The party that seeks removal has the burden of establishing that federal jurisdiction exists and that removal was proper. *Manguno v. Prudential Property & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Courts must strictly construe removal statutes in favor of remand and against removal. *Bosky v. Kroger Tex., L.P.*, 288 F.3d 208, 211 (5th Cir. 2002).

Under the fraudulent joinder doctrine, "federal removal jurisdiction premised on diversity cannot be defeated by the presence of an improperly joined non-diverse and/or in-state defendant." *Salazar v. Allstate Texas Lloyd's, Inc.*, 455 F.3d 571, 574 (5th Cir. 2006). To establish fraudulent joinder, the removing party must prove either that there has been actual fraud in the pleading of jurisdictional facts, or that there is no reasonable possibility that the plaintiff will be able to establish a cause of action against that party in state court. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc), *cert. denied*, 544 U.S. 992, 125 S.Ct. 1825, 161 L.Ed.2d 755 (2005). The defendant must demonstrate that there is no possibility of recovery by the plaintiff against the non-diverse defendant, that is, that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against the non-diverse defendant. *Id.* at 573 (citations omitted). A "mere theoretical possibility of recovery under local law" is insufficient to preclude a finding of improper joinder. *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000). A court may resolve this issue in one of two ways: by

conducting a Rule 12(b)(6)-type analysis, looking at the allegations of the complaint to determine whether it states a claim under state law against the non-diverse defendant, or by piercing the pleadings and conducting a summary judgment-type inquiry. *Id.* Ordinarily, if a plaintiff can survive a 12(b)(6)-type challenge, there is no improper joinder. *Id.*

District courts examine the plaintiff's state court pleadings at the time of removal to determine whether there is a reasonable possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 259 n.8, 264 (5th Cir. 1995). In sum, to defeat the Motion for Remand, Defendants must show that this case was properly removed to this Court under 28 U.S.C. § 1441. In order to do so, Defendants must demonstrate that there is no reasonable basis for the Court to predict that Plaintiffs might be able to recover against Hamel based on the claims and theories Plaintiffs asserted in their First Amended Petition.

### III. ANALYSIS

"Texas law has long authorized attorneys to 'practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages.'" *White v. Bayless*, 32 S.W.3d 271, 275 (Tex.App.-San Antonio 2000) (quoting *Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex.Civ.App.-Dallas 1910, writ ref'd)). Therefore, "[a]n attorney may assert any of his client's rights without being personally liable for damages to the opposing party," and "[u]nder Texas law, attorneys cannot be held liable for wrongful litigation conduct." *Id.* at 275-76; *see also Renfroe v. Jones & Associates*, 947 S.W.2d 285, 287 (Tex.App.-Fort Worth 1997). Conversely,

"[t]he litigation privilege is inapplicable if an attorney knowingly participates in fraudulent activities outside the scope of his legal representation of the client." *Michels v. Zeifman*, No. 03-08-00287-CV, 2009 WL 349167, at *3 (Tex.App.-Austin Feb. 12, 2009) (citing *Likover v. Sunflower Terrace II Ltd.*, 696 S.W.2d 468, 472 (Tex.App.-Houston [1st Dist.] 1985, no writ); *Bourland v. State*, 528 S.W.2d 350, 357 (Tex.Civ.App.-Austin 1975, writ ref'd n.r.e.)). Actions that fall within the context of an attorney's duty to represent their client in litigation, "which require the professional training, skill, and authority of an attorney, have been considered insufficient to form the basis of a fraud claim against an attorney by a non-client." *Id. See Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 408 (Tex.App.-Houston [1st Dist.] 2005) (finding that the complained-of actions by attorney—filing lawsuit and pleadings, providing legal advice, and awareness of settlement negotiations, "in sum, acts taken and communications made to facilitate the rendition of legal services"—fall within the context of the attorney discharging its duty to the client and are not the basis for a fraud claim against the attorney); *Renfroe*, 947 S.W.2d at 288 (finding that plaintiff's wrongful garnishment action arose from attorneys' actions taken in representing their clients, as their actions in "preparing and filing their clients' application for a writ of garnishment on [plaintiff's] bank accounts was within the context of discharging their duties in representing their clients").

Notably, "[t]he privilege not only extends to statements made during litigation, but also to statements made in contemplation of and preliminary to judicial proceedings." *Krishnan v. Law Offices of Preston Henrichson, P.C.*, 83 S.W.3d 295, 302 (Tex.App.-Corpus Christi 2002) (citing *Watson v. Kaminski*, 51 S.W.3d 825, 827 (Tex.App.-Houston [1st Dist.]] 2001, no pet.); *Russell v. Clark*, 620 S.W.2d 865, 868-69

(Tex.Civ.App. 1981, writ ref'd n.r.e.)). "When deciding the issue, the trial court must consider the entire communication in its context and extend the privilege to any statement that bears some relationship to an existing or proposed judicial proceeding." *Id.* "All doubt should be resolved in favor of the communication's relation to the proceeding." *Randolph v. Walker*, 29 S.W.3d 271, 278 (Tex.App.-Houston [14th Dist.] 2000). Indeed, "[c]ourts have deemed conduct related to the initiation of a suit as sufficiently related to a judicial proceeding and, therefore, absolutely privileged." *Id.* The privilege extends to attorneys representing clients not only in pending, but also in contemplated, proceedings. *Id.*

Marine is listed as a surety in the Indemnity Agreement. (Ex. A to Doc. No. 9-2, at 1.) In filing the UCC-1, Hamel was representing his client in contemplation of or preliminary to judicial proceedings. As there is no claim under state law against Hamel, there is no reasonable basis for the Court to predict that Plaintiffs might be able to recover against Hamel based on the claims and theories Plaintiffs asserted in their First Amended Petition. Therefore, this case should not be remanded.

### IV. CONCLUSION

For the reasons explained above, Plaintiff's Motion to Remand is **DENIED**. The Court dismisses Hamel without prejudice.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 11th day of January, 2012.

_____
**KEITH P. ELLISON**
**UNITED STATES DISTRICT COURT JUDGE**